uine signatures? A. No, sir. Q. You base your opinion partly on those signatures that you supposed were genuine? A. Yes, sir."

The counsel for the defendant then moved to strike out the evidence of the witness in regard to Mr. Collins' handwriting upon the ground that it was inadmissible and improper, and the proper foundation for it had not been laid. The court denied the motion, and the defendant excepted. It is claimed by the defendant—correctly, we think—that the court erred in denying the motion to strike out. The witness did not show himself qualified to testify as to the genuineness of the handwriting, either from his own knowledge or from comparison with signatures known to him to be genuine, or admitted to be so. See People v. Severance, 67 Hun, 182, 22 N. Y. Supp. 91; People v. Dorthy, 50 App. Div. 44, 63 N. Y. Supp. 592. The evidence was material, and from the position of the witness it may have had controlling effect with the jury. The error was, we think, of sufficient importance to require a reversal.

When the case was moved for trial, the defendant moved upon affidavits to put the case over the term, upon the ground of the absence of a witness, who was shown to be sick and unable to attend. The defendant claims the motion ought to have been granted. The witness absent was Warren, whose name appeared as indorser on the same note, but whose signature was claimed to have been also forged. The situation of Warren to the case was evidently such that his testimony might be quite material for the defendant. The defendant, in substance, complied with the requisites on such an application as laid down in People v. Jackson, 111 N. Y. 362, 19 N. E. 54. The disposition of such an application depends largely on the discretion of the court. Still it seems to us that under the circumstances it might well have been granted.

Judgment and order reversed, and new trial granted. All concur.

---

(33 Misc. Rep. 603.)

JERMYN v. SCHWEPPENHAUSER.

(Supreme Court, Appellate Term. January 10, 1901.)

SALES—FIXTURES—RETENTION OF TITLE—INNOCENT PURCHASER—REPLEVIN.
    Plaintiff sold boilers and their appurtenances to E., who was a dealer in such goods, under a contract requiring their delivery at certain premises, and that the title should remain in the plaintiff till the purchase price was paid. Plaintiff was informed that they were to be placed in the buildings on such premises, and they were delivered and placed therein, but did not become a part of the realty. The property did not belong to E., but he had contracted to furnish the boilers and steam fittings therein, and sold the boilers after their delivery to the owner of the premises. The premises were afterwards sold to defendant, who had no notice of the contract between plaintiff and E. Held, that plaintiff could recover the goods by replevin, since the lien law excludes such appliances, and there was no estoppel, resulting from selling the goods to a dealer therein which would give a purchaser of the latter a good title thereto, as they were sold to be placed on the specific premises.

Appeal from municipal court, borough of the Bronx, Second district.

Replevin by Walter M. Jermyn against George Schweppenhauser. From a judgment in favor of the plaintiff, the defendant appeals. Affirmed.

The following is the opinion of the court below (TIERNEY, J.):

"The subject of this action of replevin is two vertical boilers and their appurtenances. It has been submitted on an agreed-upon statement of facts, nothing being admitted by the pleadings but possession and detention by the defendant. The plaintiff is the manufacturer of the chattels. He sold them to a firm of Ellison & Co., dealers in steam boilers and steam-fitting supplies, whose store was at 2173 Seventh avenue, upon a contract of sale executed in duplicate, and one duplicate delivered to the purchaser. The contract called for the immediate delivery of the articles at premises Nos. 237 and 239 West 133d street, under an agreement that title should remain in the vendor until fully paid for. The vendor was informed at the time that the articles would be placed in the buildings on said premises. Ellison & Co. were not the owners of these premises, but the contractors for furnishing the steam fitting and the necessary boilers therefor. After the delivery of the boilers, Ellison & Co., without paying the plaintiff anything for them, sold and delivered them to the owners of the buildings, and placed them in the buildings. Subsequently the defendant purchased the buildings, with the said chattels therein, and paid the purchase price for said chattels, without notice of the agreement between Ellison & Co. and the plaintiff. The lien law, which has modified the severity of the old law of caveat emptor so as to protect the purchaser against possession vested in his vendor on secret conditions, expressly excludes boilers from its provisions, so that the determination of this case must rest upon general rules. Counsel have submitted this case upon the assumption that these chattels never became part of the realty, and there is nothing in the agreed statement of facts upon which the court might find that they were ever affixed to the freehold and became a part of the buildings. As between Ellison & Co. and the plaintiff, title to these chattels never passed, and their sale to a third party was a conversion. Ellison & Co. could give no better title than they had, unless the defendant is protected against the plaintiff's claim by an estoppel. This estoppel is claimed to arise from the fact that the plaintiff delivered the goods to a firm that he knew to be engaged in dealing in this class of merchandise. From this knowledge it is claimed the inference arises that he knew they were to be sold by the vendees, and with this understanding his placing his goods at their disposal was an authority to the vendees to make a valid sale, or, at least, that it would be a fraud on the purchasing public to furnish the vendee with the opportunity to make such a contemplated sale if its validity were afterwards to be questioned. It appears, however, that, though sold to a firm in this line of business, the boilers were not sent to replenish its general stock of merchandise at its regular store, but were delivered at specific buildings in course of erection, with the understanding that they were to be placed therein. If the plaintiff had knowledge that these were the buildings of a third party, and that Ellison & Co. had obtained the boilers to furnish them to the owner, he would be estopped from questioning the validity of a bona fide sale, after furnishing the boilers for that very purpose. It is agreed, however, that he had no notice of the relations of Ellison & Co. to the buildings. The question narrows itself, therefore, to this: Must the plaintiff be held to have necessarily assumed, from the fact that his vendee was engaged in the business of dealing in boilers, that these boilers were purchased by them to supply to others, and not for their own use? There are no facts supplied as to the apparent circumstances of Ellison & Co. to raise any inference as to the improbability of supposing them to be the principals interested in these buildings, or that they had some use for the boilers in the 30 days before payment came due other than a sale to another. The terms of sale are consistent only with the continued possession by the vendee. It is provided that, upon default in payment, the vendor may enter any place where the articles may be found, and remove the same, without hindrance, —a license that the vendee could give only as to premises of his own or

under his control. It is further provided that all sums that may be paid on account of the purchase price shall be deemed compensation for the use of the articles while in the possession of the vendee, contemplating a continued possession rather than a sale. I do not feel justified in finding from these circumstances, and without any direct evidence of such an understanding, that the boilers were sold and delivered to Ellison & Co. upon any understanding by the plaintiff that they were only for a sale over by them. The defendant urges, further, that both parties are the victims of wrongdoing of Ellison & Co., and that, as between them, the loss should fall on the one by whose act the injury was permitted. I do not think that any such principle is applicable to the situation of these parties. The plaintiff is asserting his legal title to these articles, of which he has never been devested. So long as the legislature sees fit to allow possession of boilers to be parted with on conditions as to title which are valid without being made matter of record, the plaintiff had the right to make such a sale, and must·be upheld in his legal rights, even at the expense of the victims of the opportunity for ·dishonesty so furnished. If the original owner of these articles had lost them by a larceny, no succession of purchases by innocent parties without notice could deprive him of his right of retaking them. This defendant, as the recipient of a conversion, is in no better position. It is true that the ·defendant's predecessors in title had. nothing to put them on their guard against supposing that their contractor was furnishing his own articles, and custom does not suggest making such an inquiry. But their want of no ordinary precaution does not relieve them from the misfortune that may happen to any innocent purchaser, of having dealt with one who had no title, and they must bear the consequences of the rule caveat emptor. The chattels have been taken from the defendant by a marshal under a writ of replevin obtained by the plaintiff. No evidence has been furnished of any damages by reason of detention by the defendant. Judgment must be rendered accordingly in favor of the plaintiff, awarding him possession of the chattels de-·scribed in the complaint, with the costs of this action."

Argued before TRUAX, P. J., and SCOTT and DUGRO, JJ.

Gantz & Neier, for appellant.
Meyer & Gilbert, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the lower court.

---

(57 App. Div. 232.)

### In re GOUNDRY'S ESTATE.

(Supreme Court, Appellate Division, Third Department. January 9, 1901.)

1. APPEAL—ADMINISTRATOR'S BOND—INCREASE.

Under Code Civ. Proc. § 2664, requiring that administrators give bond in a penalty fixed by the surrogate, not less than twice the value of decedent's personalty, a surrogate's order increasing the penalty of an administratrix's bond on a showing sufficient to raise a question as to whether or not certain property, not included in the inventory, belonged to the estate, would not be disturbed on appeal, since the amount of the penalty of the bond was largely discretionary with the surrogate.

.2. SAME—PROPERTY—OWNERSHIP—DETERMINATION.

Since the ownership of property alleged to belong to an estate, to which an administratrix claims title, could be determined on an accounting, under Code Civ. Proc. § 2731, declaring that, on the judicial settlement of the accounts of an administrator, a contest arising in reference to property alleged to belong to the estate, but claimed by the accounting party, shall be determined, etc., the question of such ownership could not be entertained by the surrogate in an application to compel the filing ·of an amended inventory.